## RECORD NO. 13-2444

### In The

# United States Court Of Appeals

## For The Fourth Circuit

**JEFFREY C. SKEENS, as Administrator of the Estate of Grover Skeens;
CAROLYN D. DAVIS, as Administratrix of the Estate of Charles T. Davis;
OWEN T. DAVIS, as Administrator of the Estate of Cory Davis,**

*Plaintiffs - Appellants,*

and

**GROVER SKEENS; CHARLES T. DAVIS; CORY DAVIS,**

*Plaintiffs,*

**v.**

**ALPHA NATURAL RESOURCES, INCORPORATED; ALPHA
APPALACHIA HOLDINGS, INCORPORATED,
f/k/a Massey Energy Company,**

*Defendants - Appellees.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT BECKLEY

————————————

#### NON-CONFIDENTIAL BRIEF OF APPELLANTS

————————————

**J. Michael Ranson**
**RANSON LAW OFFICES**
**1562 Kanawha Boulevard, East**
**P. O. Box 3589**
**Charleston, WV  25336**
**(304) 345-1990**

**G. Patrick Jacobs**
**JACOBS LAW OFFICE**
**7020 MacCorkle Avenue, SE**
**Charleston, WV  25304**
**(304) 926-6676**

*Counsel for Appellants*          *Counsel for Appellants*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____      Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                                      YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                  YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____      Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____            _____
      (signature)                                       (date)

# Table of Contents

**Page:**

Table of Authorities ................................................................................. ii

Statement of Subject Matter and Appellate Jurisdiction ........................... 1

Statement of the Issues............................................................................. 1

Statement of the Case ............................................................................. 2

    a.    Estate Beneficiaries ............................................................. 5

    b.    Wrongful Death Beneficiaries.............................................. 7

    c.    Distribution Differences between Monies Paid to Estate Beneficiaries and Monies Paid To Wrongful Death Beneficiaries .................................................................... 8

    Statement of the Facts ...................................................................... 9

Summary of the Argument....................................................................... 14

Argument................................................................................................ 15

    Standard of Review...................................................................... 15

    Discussion.................................................................................... 15

Conclusion ............................................................................................. 30

Request for Oral Argument..................................................................... 31

Certificate of Compliance

Certificate of Filing and Service

## Table of Authorities

Page(s):

**Cases:**

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

*Does v. United States*,
817 F. Supp. 2d 1337 (S.D. Fla. 2011)..............................................20, 21, 23

███████████████████████████████████████████████████████████████

*In re W.R. Huff Asset Management Co.*,
409 F.3d 555 (2nd Cir. 2005) .......................................................................21

*Kenna v. U.S. Dist. Court for C.D.Cal.*,
435 F.3d 1011 (9th Cir. 2006) .....................................................................15

*Murphy v. Eastern American Energy Corp.*,
680 S.E.2d 110, 224 W. Va. 95 (W. Va. 2009)..............................................7

*Mylan Labs., Inc. v. Matkari*,
7 F.3d 1130 (4th Cir. 1993) .........................................................................15

*United States v. Hughie Elbert Stover*,
5:11 Cr. 00038 (S.D. W. Va.)..................................................................2, 10

*United States v. McVeigh*,
106 F.3d 325 (10th Cir. 1997) .....................................................................15

*United States v. Thomas Harrah*,
5:11 Cr. 00082 (S.D. W. Va.)..................................................................2, 10

███████████████████████████████████████████████████████████████

**Statutes:**

18 U.S.C. § 3663(a)(1)(A) ...................................................................7, 29

18 U.S.C. § 3771 (Crime Victims' Rights Act (CVRA)) ................................*passim*

18 U.S.C. § 3771(a) ..............................................................15, 16, 23

18 U.S.C. § 3771(a)(2) ....................................................................20

18 U.S.C. § 3771(a)(3) ....................................................................20

18 U.S.C. § 3771(a)(6) .....................................................................2

18 U.S.C. § 3771(b) .......................................................................20

18 U.S.C. § 3771(d)(1) ....................................................................15

18 U.S.C. § 3771(d)(3) ....................................................................16

18 U.S.C. § 3771(e) ........................................................................6

W. Va. Code § 42-1 .....................................................................6, 12

W. Va. Code § 42-1-3a .....................................................................6

W. Va. Code § 55-7-6 ..........................................................7, 12, 12, 13

**Rule:**

Fed. R. Civ. P. 12(b)(6)...................................................................15

**Other:**

Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and
Nila Lynn Crime Victims' Rights Act,
 Pub. L. No. 108-405, §§ 101-104, 118 Stat. 2260 (2004)............................15

## **Statement of Subject Matter and Appellate Jurisdiction**

The underlying causes of action were initiated in the Southern District of West Virginia by estate beneficiaries of 3 Fallen Miners. The three actions were filed pursuant to a Federal Question under the Crime Victims' Rights Act 18 U.S.C. § 3771 and Diversity Jurisdiction as a contract action to enforce the terms of a Non-Prosecution Agreement to which the Appellants were Third Party Beneficiaries. Appellate Jurisdiction is based upon the District Court's dismissal of the plaintiffs' causes of action wherein the Court held it did not have jurisdiction to preside over these matters pursuant to 18 U.S.C. § 3771 (JA 39). Appellate Jurisdiction is also based upon the District Court's dismissal of the plaintiffs' diversity causes of action holding that the Appellants failed to state of cause of action upon which relief could be granted (JA 463).

## **Statement of the Issues**

1.  Whether the District Court erred in dismissing the plaintiffs' cause of action pursuant to 18 U.S.C. § 3771 Crime Victims' Rights finding that they did not have a pre-indictment right to be "treated with fairness and with respect" (JA 39)?

2.  Whether the District Court erred in dismissing the plaintiffs' cause of action wherein the plaintiffs sought review of a voluntary restitution agreement to

assure the restitution was paid in full and in timely pursuant to 18 U.S.C. § 3771(a)(6) (JA 39)?



**Statement of the Case**

Appellants are Estate Beneficiaries of three of the Fallen Miners who died at Upper Big Branch on April 5, 2010 when a mine owned by Massey Energy Company (hereinafter "Massey") exploded. As a direct result of the blast, 29 miners died and countless others were injured.

In the aftermath of the explosion, the United States Attorney for the Southern District of West Virginia began a criminal investigation of Massey for acts related to the explosion. The first indictments were returned in Superseding Indictments in *United States v. Hughie Elbert Stover*, 5:11 Cr. 00038 (S.D. W. Va.), and in *United States v. Thomas Harrah*, 5:11 Cr. 00082 (S.D. W. Va.).

On June 1, 2011, Alpha Natural Resources, Inc. (Alpha) purchased the assets of Massey and its affiliated companies[1]. Alpha, as a new buyer of Massey and its affiliates was concerned that the Massey entities would be charged with criminal acts and ordered to pay restitution. In an effort to alleviate this concern, on December 6, 2011, Alpha entered into a Non-Prosecution Agreement (NPA) with the United States Attorney in which it voluntarily agreed to pay $1,500,000.00 in restitution to each of the families of the Fallen Miners and to 2 of the injured miners (JA 75). To date, Alpha paid the agreed restitution to 20 of the 29 families. Alpha has failed and refused to pay restitution to the other 9 families including these Appellants[2].

Clearly, the intent of the NPA was to treat each family of each miner the same. The NPA requires each family to be paid $1,500,000.00 as restitution. In order to determine whether all families were treated fairly under the NPA or received the agreed upon restitution the Court must define "family". Once "family" is defined the question becomes: "have the 'families' been paid the agreed upon

---

[1] It is undisputed that Alpha's purchase permitted it to assume indirect ownership of all Massey subsidiaries and that the assets or liabilities of those entities purchased were not transferred. Also, it is undisputed that Alpha is not a successor to Massey.

[2] The NPA divides the 29 fallen miner's families into two groups, *i.e.* the *Fallen 11* and the *Fallen 18*. However, it is believed that 2 of the *Fallen 11* received amounts equal to the agreed upon restitution above the $3,000,00.00 settlement. If true, this reduces the *Fallen 11* to the *Fallen 9* so in this brief the Appellants will reference the *Fallen 9*, the *Fallen 2* and the *Fallen 18*.

restitution?" If, and in the event some families have not been paid the agreed upon restitution then the question becomes "does the Federal Court have authority to order payment of the agreed upon Restitution?"

It is the Appellants contention that "family", as defined by West Virginia law, is none other than the Estate Beneficiaries of each of the deceased miners. Simply put, these Appellants, all of whom are estate beneficiaries of deceased miners, have not been paid the agreed upon restitution, while other Estate Beneficiaries of deceased miners have been paid the agreed upon restitution. Alpha proclaims that it is not required to pay the restitution to nine of the families. Massey's incorrect proclamation is based upon a theory that wrongful death settlements with Massey, which were made prior to the existence of the NPA, somehow extinguish Alpha's duty to pay restitution to the families or estate beneficiaries of those nine miners. Effectively, Alpha alleges that the NPA required it to make $1,500,000.00 in restitution to wrongful death beneficiaries and not "families" as set forth in the NPA. However, this position is contrary to the plain language of the NPA and is absolutely inconsistent with the actual payment of restitution Alpha made under the NPA to the other fallen miners.

Furthermore, once the NPA was signed, Alpha paid or made available restitution monies to the estate beneficiaries of the *Fallen 18* versus the wrongful death beneficiaries of the *Fallen 18*. The restitution was paid to the estate

4

beneficiaries of the *Fallen 18* without any credit for monies paid or to be paid to wrongful death beneficiaries of the *Fallen 18*(JA 20, 51A).

Estate Beneficiaries and Wrongful Death Beneficiaries **are not the same** legal entities or "class" of persons under West Virginia law. A payment of restitution to Estate Beneficiaries is not a payment to Wrongful Death Beneficiaries and wrongful death payment to Wrongful Death Beneficiaries is not a restitution payment to Estate Beneficiaries. The terms Estate Beneficiaries and Wrongful Death Beneficiaries cannot be used interchangeably.

The Appellants respectfully seek an order from this Honorable Court pursuant to 18 U.S.C. § 3771 Crime Victims' Rights Act directing the Honorable Irene Berger of the Southern District of West Virginia to protect the appellant's rights, under the Non-Prosecution Agreement (NPA) as required by the Crime Victims' Rights Act set forth in 18 U.S.C. § 3771.

Finally, the Appellants request that the Order granting the motion to dismiss their contract action be reversed and that the case be remanded for a full development of the record to determine if the Appellants have been paid the restitution as set forth in the NPA (JA 75).

a.    **Estate Beneficiaries**

When a person dies in West Virginia, in general and absent a Will to the contrary, the Estate Beneficiaries are the immediate family of the deceased. When

a person dies without a Will (*this applies to all of the Appellants named herein*) the 'beneficiaries' are defined by **West Virginia Code 42-1.** In most cases, the beneficiaries are household family members, not just a blood relative[3]. These family members are represented by the legally appointed Administrator who acts on their behalf. All of the Appellants herein are Estate Beneficiaries (spouses, children or parents).

When money is paid to the Estate Administrator for the benefit of the Estate, it is divided among the Estate Beneficiaries under the statutory formulas set forth in **West Virginia Code § 42-1**. Examples would be payments for property damage of the decedent, donations from various charitable groups who lend support to the families devastated by loss or **restitution**.

Estate Beneficiaries are also recognized as "victims" under the Criminal Victims' Rights Act (CVRA) **18 U.S.C. § 3771** when dealing with a decedent. Under (e) *Definitions* "the term 'crime victim' means a person directly and proximately harmed as a result of the commission of a Federal offense … In the case of a crime victim <u>who is deceased</u> the … <u>representatives of the **crime victim's estate**</u> … may assume the crime victim's rights under this chapter …" (**emphasis added**).

---

[3] If a man dies leaving wife/children they are by definition the estate beneficiaries. If the man dies without wife or child then the estate beneficiary is his grandchildren and if the man dies with no wife, nor child, nor grandchild then the estate beneficiaries are the man's parents. **West Virginia Code § 42-1-3a.**

Furthermore, **18 U.S.C. § 3663**(a)(1)(A) states, "the Court, when sentencing a defendant … may order … that the defendant make restitution to any victim of such offense, **or if the victim is deceased**, to the **victim's estate**."  If the actual victim is deceased the "victim" becomes the victim's estate." Consequently, under Estate Beneficiaries are the 'family' of a decedent and a 'victim' under federal law.

b.    **Wrongful Death Beneficiaries**

The West Virginia Wrongful Death Statute establishes a specific class of individuals who have the right to recover for the wrongful death of an individual. Wrongful Death litigation is brought on behalf of the class by the Administrator of the Estate. This is a separate class of persons from Estate Beneficiaries. The persons who qualify are defined in West Virginia as Wrongful Death Beneficiaries **West Virginia Code § 55-7-6**, *Murphy v. Eastern American Energy Corp.*, 680 S.E.2d 110, 224 W. Va. 95 (W. Va. 2009). Any money received in a wrongful death action does not pass through the estate but instead goes to the Wrongful Death Beneficiaries after the distribution is approved by the Court where the cause of action is pending.  Distribution of the proceeds of the wrongful death recovery is achieved through agreement between the Wrongful Death Beneficiaries or by order of the Court.  **West Virginia Code § 55-7-6**

A Wrongful Death Beneficiaries **is not necessarily** a family member or a blood relative. In fact, any person who shows financial dependence upon the

decedent can make a claim, *i.e.* such as a live-in girlfriend. All distributions of wrongful death monies must be approved by the Court in a wrongful death proceeding which involves only wrongful death beneficiaries. It is critical to note that wrongful death beneficiaries can only receive money for the resolution of a wrongful death case. They cannot claim other types of damages outside of the wrongful death statute.

**c.    Distribution Differences between Monies Paid to Estate Beneficiaries and Monies Paid To Wrongful Death Beneficiaries**

When a wrongful death case is settled in West Virginia the wrongful death statute requires the Circuit Court to conduct a hearing and approve the settlement and distribution of the settlement monies among all of the wrongful death beneficiaries. For example, if a deceased miner was survived by, 2 children, 4 siblings, a parent and a girlfriend, who claimed dependency then the wrongful beneficiaries, would consist of: 2 children, 4 siblings, 1 parent and 1 girlfriend. If the wrongful death case was settled for $3,000,000.00, and approved by the Court, then the proceeds would be distributed among those 8 individuals by the Court.

If, on the other hand the $3,000,000.00 was "non-wrongful death" money or restitution that money ***would go solely*** to estate beneficiaries. In the example above, if a Fallen Miner was survived by 2 children then any restitution money would to be divided equally between those 2 children and only those 2 children and approval by the Circuit Court would not be required. Siblings, parents, a

8

girlfriend or any other individual would not be entitled to nor could they make a claim for "non-wrongful death" monies paid to estate beneficiaries.

The NPA required estate beneficiaries of all the families of all the deceased miners to be paid $1,500,000.00 in restitution. These Appellants have not been paid restitution.

### **Statement of the Facts**

The Appellants (Estate Beneficiaries) are victims of federal crimes committed by the agents of Massey Energy Company (hereinafter Massey) and its subsidiaries (JA 52). Their loved ones died in one of the worst mining tragedies in the history of the United States on April 5, 2010. On June 1, 2011, Alpha purchased the assets of Massey and its subsidiaries. At some point after Alpha completed its purchase it entered into discussions with the United States Attorney's Office for the Southern District of West Virginia to consummate an Agreement that would forever absolve Alpha from any future criminal responsibility as it related to the deaths and injuries at Upper Big Branch mine. The "agreement" is known as the *Non-Prosecution Agreement* (JA 75).

The opening provision of the NPA, which Alpha voluntarily agreed to, states that the U.S. Attorney's office ("Office") was involved in an "ongoing criminal investigation" arising out of the "explosion" at "Upper Big Branch" (JA 75).

This Agreement arises from the ongoing **criminal investigation** conducted by the Office of the **explosion** at

Performance Coal Company's **Upper Big Branch Mine** ("UBB") on April 5, 2010 and the conduct of employees of Performance Coal Company and its parent, Massey, and its affiliates regarding violations of the Mine Act, misleading statements regarding health and safety issues, conduct that impeded the work of the United States Department of Labor ("DOL"), including the Mine Safety and Health Administration ("MSHA"), and related issues (JA 75).

The NPA also states that the Government agrees not to criminally prosecute

Massey, any predecessor or successor of Massey for any criminal acts committed

by its agents.

11. In consideration for Alpha's and Massey's entering into this Agreement and their commitment to perform the duties and obligations set forth herein, the Government agrees not to **criminally prosecute** or bring any civil action against Massey, any predecessor or successor of Massey, its current parent, or any of its current or previous direct or indirect affiliates, related to: (a) any conduct attributable to Massey or its affiliates set forth in the Superseding Indictment filed in *United States v. Hughie Elbert Stover*, 5:11 Cr. 00038 (S.D. W. Va.), and in *United States v. Thomas Harrah*, 5:11 Cr. 00082 (S.D. W. Va.); (JA 80).

One of the major elements of the NPA was the voluntary restitution to be

paid to families of the victims. In the first sentence of **Paragraph 8** it states:

As **restitution for the victims** injured in the explosion Alpha agrees to pay, or to cause Massey or its affiliates to pay, at **least $1,500,000.00 to each of the families of the fallen miners.** (JA 79))

In using the words "victims" and "families" the <u>only class of persons</u> this

can refer to is the *Estate Beneficiaries* of the *29 Fallen Miners*. Clearly, any

restitution paid must be paid to the Estate Beneficiaries. It is undisputed that Alpha

agreed to pay $1,500,000.00 to <u>each</u> of the families. The legal query is "how to

10

define family" as set forth in the agreement? The Appellants contend that the "family" is none other than the Estate Beneficiaries.

The Appellants do not dispute that Massey (not Alpha) settled wrongful death claims with the wrongful death beneficiaries of the fallen miner's estates prior to the execution of the NPA. However, a payment to wrongful death beneficiaries, a separate entity or class of persons, is not a payment to the "family" or estate beneficiaries. Since the two classes of 'beneficiaries' can be and are separate and distinct legal entities, the Appellees cannot possibly use monies paid to wrongful death beneficiaries to satisfy a legal obligation to pay restitution due to estate beneficiaries. So, while Massey did pay a $3,000,000.00 wrongful death settlement to the class of wrongful death beneficiaries of the *Fallen 9*, neither Massey nor Alpha ever paid $1,500,000.00 in restitution to the family of the *Fallen 9*.

Alpha proclaims that when the NPA was executed it intended "families" to be the wrongful death beneficiaries of the estates. However, this argument is not consistent with Alpha's own actions. Specifically, when the NPA was executed 18 wrongful death claims were pending. If a wrongful death case was still pending then Alpha was permitted, under the NPA, to make two separate restitution payments to the families of the *Fallen 18*.

> (b) (i) $500,000.00 to be paid within 15 days of the execution of this Agreement, and (ii) $1,000,000.00 which will be payable at the time

of the resolution of pending civil claims through settlement, judgment, or otherwise, and as part of such civil resolution to the extent the civil resolution results in a monetary recovery[4] (JA 79).

The legal question becomes "did Alpha and the U.S. Attorney's office define family in some way other than what is expressly set forth in the NPA?  In other words, was the $500,000.00 restitution to be paid to the estate beneficiaries or family of the *Fallen 18* or was the $500,000.00 restitution to be paid to the wrongful death beneficiaries, who can be non-family members of the *Fallen 18*?  The restitution payments actually made clearly illustrate the definition of "family" – the monies were paid directly to the estate beneficiaries only – not wrongful death beneficiaries.

It is undisputed that within 15 days of execution the NPA, Alpha paid or offered to pay $500,000.00 to the <u>Estate Beneficiaries</u> of the *Fallen 18*.  The money was paid to those who would receive it under **West Virginia Code § 42-1 <u>and not as set forth</u> in West Virginia Code § 55-7-6** (JA 20, 51A).  The U.S. Attorney's office vocalized no objection to the restitution payment being made to the estate beneficiaries. The $500,000.00 restitution was never made or offered to any of the wrongful death beneficiaries of the *Fallen 18*. If the $500,000.00 was meant to be paid as wrongful death money then by **West Virginia Statute § 55-7-6,**

---

[4] The estates of the *Fallen 18* were to be paid and were paid immediate restitution in the amount of $500,000.00. The wrongful death beneficiaries, on the other hand, continued pursuing their wrongful death claims even after the final restitution payment was paid to the estate beneficiaries.

the United States Government and Alpha would, at a minimum, be required to do the following:

1.      Obtain a Circuit Court hearing date for approval of wrongful death settlement and distribution;

2.      Have guardians appointed for any minors that may be wrongful death distributees;

3.      Notify all of the wrongful death distributees of the *18 Fallen* miners of the wrongful death distribution hearing date so they could file or make appropriate claims;

4.      File a petition with a West Virginia Circuit Court for all 18 Fallen miner families seeking approved of the settlement and distribution;

5.      Obtain an Order signed by the West Virginia Circuit Court approving the acceptance of the  $500,000.00 and designating the distribution;

6.      Then, on the day of the distribution hearing write multiple checks to the multiple wrongful death beneficiaries based upon the decision by the Court as to how the money was to be distributed.

These mandatory steps are required by the West Virginia wrongful death statute and were not done in regard to the $500,000.00 restitution payments.[5]

Furthermore, under the CVRA and well established West Virginia contract law, the estate beneficiaries of the *Fallen 9* **must be treated the same** as the estate beneficiaries of the *Fallen 18*. The agreement unequivocally requires each family

---

[5] Counsel for the Appellants also represents wrongful death beneficiaries of the *Fallen 18*. He can confidently state that none of the above was done.  Instead, Appellees made immediate and direct payments to estate beneficiaries – all without Court approval or without compliance with the requisites set forth in **West Virginia Code 55-7-6**.

13

receive $1,500,000.00 in restitution. As it relates to the *Fallen 18*, the Estate Beneficiaries of those miners were paid restitution. Moreover, separate from and in addition to the December, 2011 restitution payments made to the estate beneficiaries, the wrongful death beneficiaries of the *Fallen 18* settled their wrongful death claims on or about January 6, 2012. Upon information and belief, the 2 seriously injured miners identified in the NPA also received $1,500,000.00 in restitution. This information, however, is presently under seal and is not expressly known to counsel for these parties.

### Summary of the Argument

Pursuant to 18 U.S.C. § 3771, the District Court clearly has the authority to review the Non-Prosecution Agreement to assure that its terms are complied with and that these Appellants were provided a right to confer, were treated with fairness, and were given accurate and timely notice of court proceedings. █████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

## Argument

## Standard of Review

This is an appeal from a motion to dismiss order. The standard of review for a motion to dismiss based upon a Federal Rule 12(b)(6) order and a question of subject matter jurisdiction is ***de novo***. The court is required to accept all allegations of the complaint as true and construe the facts in the light most favorable to the plaintiff. *See, Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## Discussion

Pursuant to 18 U.S.C. § 3771(a) Crime Victims' Rights Act[6], the District Court is charged with the responsibility of assuring that victims of a crime have, among other rights, the following;

    (5)    The reasonable right to confer with the attorney for the Government in the case;

    (6)    The right to full and timely restitution as provided in law;

---

[6] The criminal justice system has long functioned on the assumption that crime victims should behave like good Victorian children—seen but not heard. The Crime Victims' Rights Act sought to change this by making victims independent participants in the criminal justice process. ***See***, Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act, Pub. L. No. 108-405, §§ 101-104, 118 Stat. 2260, 2261-65 (2004) (codified at 18 U.S.C. § 3771). The CVRA guarantees crime victims eight different rights, and unlike the prior crime victims' rights statute, allows both the government and the victims to enforce them. *See* 18 U.S.C. §§ 3771(a), (d)(1); *United States v. McVeigh*, 106 F.3d 325, 335 (10th Cir. 1997) (per curiam). *Kenna v. U.S. Dist. Court for C.D.Cal.*, 435 F.3d 1011 (9th Cir. 2006)

(8)    The right to be treated with fairness and with respect for the victim's dignity and privacy

While the District Court acknowledged the Court's responsibility, as it relates to 18 U.S.C. § 3771, in granting the Appellee's motion to dismiss, the District Court found that it had **<u>no jurisdiction</u>** because 18 U.S.C. § 3771 did not apply to the terms and conditions of Non-Prosecution Agreements. However, this finding is clearly contrary to well established law and statute which states:

> The rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime **<u>or, if no prosecution is underway</u>**, in the district court in the district in which the crime occurred.  18 U.S.C. § 3771(d)(3) (**emphasis added**).

The statute clearly states that "the district court **<u>shall</u>** take up and decide any motion asserting a victim's right forthwith" (**emphasis added**).

It is not disputed that all of the families of the decedents suffered similar injuries and/or death as a result of the criminal acts at Upper Big Branch. Despite these similarities, twenty of the deceased miner's wrongful death beneficiaries settled wrongful death cases with Alpha and Massey and those same miners' families' estate beneficiaries received $1,500,000.00 in restitution.  In contrast, nine of the deceased miners (of which these Appellants are a member) wrongful death beneficiaries settled wrongful death cases with Alpha and Massey and those same miners families estate beneficiaries have been inexplicitly denied the agreed upon restitution. Clearly, these victims who have become known as the Estate

Beneficiaries of "*the Fallen 9*" have the same unfettered right, pursuant to 18 U.S.C. § 3771, to be treated fairly. The District Court is duty bound by Congress to assure fair treatment of the *Fallen 9*. Presently, and without being consulted and/or receiving fair treatment, the rights of *the Fallen 9* to restitution has been compromised -- without any notice, consideration or input by those families.

It is undisputed that estate beneficiaries of the other *Fallen 18* miners were paid $500,000.00 within in 15 days of the Non-Prosecution Agreement being signed. This payment was simple restitution.  The payment was neither wrongful death settlement monies nor was the payment distributed pursuant the West Virginia Wrongful Death Statute (JA 20, 51A).

The agreement, as it relates to the *Fallen 18*, also clearly states that the final payment of $1,000,000.00 will be paid outside of any settlement or verdict at the time said settlement or verdict is obtained.  Specifically, the agreement states:

> $1,000,000.00 which will be payable at the time of the resolution of pending civil claims through settlement, judgment, or otherwise, and as part of such civil resolution to the extent the civil resolution results in a monetary recovery (JA 79).

A simple reading of this language states that once the wrongful death beneficiaries resolve their wrongful death claim then Alpha would pay $1,000,000.00 in addition to said final judgment. The payment would be to families (Estate Beneficiaries). If the wrongful death beneficiaries of the *Fallen 18* decide not to settle their claims and a jury returned a defense verdict then the

17

wrongful death beneficiaries would not receive any wrongful death benefits. However, the Estate Beneficiaries of the *Fallen 18* would receive the $1,000,000.00 in restitution for a total guaranteed restitution payment of $1,500,000.00.

Alpha's current position is that under the NPA the families (Estate Beneficiaries) of the *Fallen 9* will not receive any restitution since the Wrongful Death Beneficiaries settled their wrongful death cases prior to the execution of NPA. However, 18 of the families (Estate Beneficiaries) of the *Fallen 18* would receive or were to receive $1,500,000 in restitution while the Wrongful Death Beneficiaries of the *Fallen 18* would continue to proceed with their litigation to obtain Wrongful Death Benefits.[7] In fact, the NPA makes no distinction and it is clear that all families are and were to be treated the same (JA 75).

Clearly, Alpha has used smoke and mirrors and taken advantage of the U.S. Attorney's Office lack of legal expertise as it relates to civil law. It is clear that Alpha misrepresented that it previously paid restitution to the Estate Beneficiaries of the *Fallen 9* when Alpha settled the claims of the Wrongful Death Beneficiaries -- when in fact no restitution was paid at all. Incredibly,

---

[7] Since the *Fallen Eleven* Wrongful Death Beneficiaries received payment for settlements of wrongful death several months prior to the entry of the Non-Prosecution Agreement there was absolutely no reason to agree to an extinguishment of the families (Estate Beneficiaries) rights as crime victims without any consideration. In fact the agreement does not do that as it calls for $1,500,000.00 to be paid to each family.

Alpha contends that the NPA simply required a minimum payment of $1,500,000.00 be made to wrongful death beneficiaries of the fallen miners and not families. However, the express language of the NPA and the acts of Alpha after executing the NPA are completely contrary to this position.

Additionally, there is no doubt but that the U.S. Attorney's office intended the restitution payment to be made to Estate Beneficiaries since they approved the $500,000.00 being paid to the <u>Estate Beneficiaries</u> of the *Fallen 18* and did not require Alpha to make the payment to the Wrongful Death Beneficiaries of the Fallen 18. The action by the U.S. Attorney's office and Alpha is precisely why it is critical under the CVRA to notify victims of matters that might affect them. Despite being victims, the Appellants were not notified of the NPA until a public announcement was made by the United States Attorney's Office and Alpha that all of the families would be receiving $1,500,000.00 as restitution (JA 166 and 168).If these Appellants were notified, as required, they would, at the very least, have given the U.S. Attorney's Office information that would have resulted in all of the victims being treated equally and the same.

Certainly, all of these matters need to be reviewed to determine if the agreement is fair as to all victims and if it has been complied with in its entirety. However, and contrary to well established law, the District Court refused to act and dismissed the Appellant's cause of action supporting the position of Alpha that

because it was not indicted or found guilty of a crime the Criminal Victims' Rights Act does not apply (JA 39). Seemingly, Alpha convinced the District Court it is powerless to review the NPA. Obviously, the CVRA grants the power to the District Court, but the District Court must use it.

The express language of the Act itself states that victim's representative can file for relief even if "**no prosecution is underway**". Poignantly, in ***Does v. United States***, 817 F. Supp. 2d 1337 (S.D. Fla. 2011), as in the present case, the plaintiffs complained that they were not consulted before the government entered into a Non-Prosecution Agreement. In ***Does***, the plaintiff successfully argued that the CVRA's protections attach before a formal charge is filed against the criminal defendant. The ***Does*** plaintiffs contended that the CVRA applied and that the U.S. Attorney's Office violated their CVRA rights; namely, their rights to confer, to be treated with fairness, and to accurate and timely notice of court proceedings. The Court agreed. The ***Does*** Court addressed the threshold issue of whether the CVRA attaches before the government brings formal charges against the defendant and Court unequivocally held that ***it does*** because the statutory language clearly contemplates **pre-charge proceedings**. By way of example the ***Does*** Court pointed out that *Subsections (a)(2) and (a)(3)* provide rights that attach to "any public court proceeding ... involving the crime." Similarly, subsection (b) requires courts to insure CVRA rights in "any court proceeding involving an offense against a crime

victim." Court proceedings involving the crime are not limited to post-complaint or post-indictment proceedings, but can also include initial appearances and bond hearings, both of which can take place before a formal charge. The ***Does*** Court found that the CVRA <u>can apply before</u> formal charges are filed and in ***Does*** the Court ordered complete discovery.

Another clear example of applying the CVRA <u>before formal charges</u> are filed can be found in ***In re W.R. Huff Asset Management Co.***, 409 F.3d 555 (2nd Cir. 2005) where the Court found and recognized the right to bring the cause of action but eventually holding that the CVRA was not violated.

In the underlying case, it is clear that the Appellants' rights under the CVRA were violated in at least one of two ways. First and foremost is Alpha's admitted refusal to pay the agreed restitution as set forth in the Non-Prosecution Agreement (JA 75). Distinctly, the District Court incorrectly held that since Alpha did not plead guilty to a crime, it could not oversee the timely and full payment of restitution (JA 39). The Appellants agree that if Alpha did not agree to pay restitution the District Court, absent a criminal conviction, could not order restitution. However, in this case, Alpha agreed to voluntarily pay restitution in order to avoid criminal prosecution (JA 75). The amount of restitution and the payment was expressly set forth by Alpha and the U.S. Attorney's Office in a public press conference broadcast which outlined that each of the families of the

fallen victims would be paid restitution of $1,500,000.00 (JA 166 and 168). However and contrary to that public broadcast about the NPA, Alpha now proudly boasts it has not paid the $1,500,000.00 restitution to at least nine of those families and that they have no intentions of doing so.

It is Alpha's contention that no judicial body can insure the true victims of this tragedy receive restitution, even in light of its agreement to do so. The Appellants disagree. Although, the District Court could not order restitution pre-conviction it certainly can order the payment of agreed restitution, pursuant to the CVRA. This is true even if **no prosecution is underway.** The District Court positively has the power to review the terms of any non-prosecution agreement to insure that voluntary payments are full and timely as promised. The Appellants herein do not take issue with the amount of restitution Alpha agreed to pay to escape criminal prosecution but are extremely distressed by the fact that their CVRA rights were violated and they were denied their right to confer, to be treated with fairness, and to receive accurate and timely notice of court proceedings.

The second way the Appellants' CVRA rights were violated is that they were not treated with fairness and with respect.  The NPA was entered into under the guise that all of the families would be treated the same.  It is abundantly clear, however, that under the NPA the Estate Beneficiaries of at least 18 families were paid restitution outside the claim of their Wrongful Death Beneficiaries (JA 20, 51A).

Meanwhile the *Fallen 9* Estate Beneficiaries have not paid any restitution. Plainly, these Appellants seek to have the non-prosecution agreement equally applied to all victims or set aside. *See*, ***Does***, *Id.*

Continuing, the District Court also dismissed the Appellants' request under the CVRA even though in ***Footnote 7***, the Court recognized that the Appellants have clear pre-indictment rights.

> ***Footnote 7*** states as follows (JA VI at 39):
>
> For example, the right to be "reasonably protected from the accused" and the right to be "treated with fairness and with respect" may apply pre-indictment. *Does v. United States*, 817 F. Supp. 2d 1447 (S.D. Fla. 2011) ("The government's obligation to give victims notice of their rights under subsection (a) can apply before any charging instrument is filed, depending on which subsection (a) right is at issue and the circumstances involved.") (JA 47)

A significant area for which these Appellants sought review by the District Court was based on the fact that they were not treated with fairness and with respect in exchange for Alpha obtaining relief under the Non-Prosecution Agreement. The restitution rights of the *Fallen 9* were extinguished without any advance notice or consultation. No explanation has been given as to why the *Fallen 18* and *Fallen 2* were provided payments of $1,500,000.00 in restitution and the *Fallen 9* received no restitution. The role of the District Court under the CVRA is to make an inquiry and review the non-prosecution agreement to assure that all victims are treated fairly and with respect. Curiously, the District Court found it is

required to undertake such a review but then refused to do so and instead dismissed the Appellants' cause of action.

In addition the District Court dismissed the Appellants' cause of action to enforce the NPA as a 3rd party beneficiary (JA 463).



[8] Neither Alpha nor the Estate Beneficiaries are parties to the settlements reached by the Wrongful Death Beneficiaries with Massey.



███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[9] The West Virginia Wrongful death statute does not limit payments to a family member. The Wrongful Death Statute states as follows: **any persons** who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution. On the other hand a payment to "a family" would, at least, follow the laws of descent and distribution or a person's legal will.  Another example would be a decease miner whose only living family consisted of grandchildren but at the time of his death had a live-in companion who was dependent on said miner. Grandchildren are not named in the West Virginia Wrongful Death Statute. A payment pursuant to the West Virginia Wrongful death statute may go in total to the live-in companion while a payment to "the family" would go to the Grandchildren.



████████████████████████████████████████

████████████████████████████████

### Conclusion

The Appellants/Plaintiffs respectfully request this Court reverse the District Court's Order dismissing their claims under the 18 U.S.C. § 3771 Crime Victims' Rights Act and remand this action back to the District Court directing the District Court to address and decide the Plaintiffs' motion asserting their victims' rights forthwith.  Further the Appellants/Plaintiffs respectfully request this Court reverse the District Court's Order dismissing their 3rd party contractual claims seeking to enforce rights granted them under the Non-Prosecution Agreement and remand this action back for full factual development and for such and other relief as this Court may deem just and proper.

## <u>Request for Oral Argument</u>

Appellants request oral argument.

Respectfully submitted

/s J. Michael Ranson
**J. Michael Ranson, WVSB #3017**
Ranson Law Offices, PLLC
1562 Kanawha Blvd., East
Post Office Box 3589
Charleston, WV  25336
(304) 345-1990

/s G. Patrick Jacobs
**G. Patrick Jacobs, WVSB #1867**
Jacobs Law Office
7020 MacCorkle Avenue, SE
Charleston, WV  25304
(304) 926-6676

## Certificate of Compliance with Rule 32(A)
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains 7,525 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/ J. Michael Ranson
J. Michael Ranson

*Counsel for Appellants*

Dated: February 10, 2014

## <u>Certificate of Filing and Service</u>

I hereby certify that on February 10, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Gretchen M. Callas
Alvin L. Emch
JACKSON KELLY, PLLC
1600 Laidley Tower
500 Lee Street, East
P. O. Box 553
Charleston, WV  25322
(304) 340-1000

*Counsel for Appellees*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219