RECORD NUMBER: 13-2444

# United States Court of Appeals

*for the*

# Fourth Circuit

**JEFFREY C. SKEENS, as Administrator
of the Estate of Grover Skeens, et al.,**

*Plaintiffs-Appellants,*

– v. –

**ALPHA NATURAL RESOURCES, INC.,
ALPHA APPALACHIA HOLDINGS, INC.,
*f/k/a MASSEY ENERGY COMPANY*.,**

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT BECKLEY

## BRIEF OF APPELLEES

A. L. EMCH
GRETCHEN M. CALLAS
JACKSON KELLY PLLC
Post Office Box 553
500 Lee Street, East, Suite 1600
Charleston, WV 25301-3202
(304) 340-1000

*Counsel for Defendants-Appellees*

CP COUNSEL PRESS • VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. ___13-2444___     Caption: _Jeffrey C. Skeens, et al. v. Alpha Natural Resources, Inc., et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Alpha Natural Resources, Inc._
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO

2.      Does party/amicus have any parent corporations?                               ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                        ☑YES ☐NO
        If yes, identify all such owners:
        Based on the disclosures contained in Schedule 13G/A filed with the U.S. Securities and Exchange Commission on June 10, 2013, FMR LLC indicated that it and its affiliates held, as of that date, 13.847% of the outstanding common stock of Appellee.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ A. L. Emch                              Date:    December 17, 2013

Counsel for:  Alpha Natural Resources, Inc.

## CERTIFICATE OF SERVICE
***************************

I certify that on  December 17, 2013  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

J. Michael Ranson, Esquire
Cynthia M. Ranson, Esquire
RANSON LAW OFFICES, PLLC
1562 Kanawha Blvd., East
P.O. Box 3589
Charleston, WV 25336-3589

G. Patrick Jacobs, Esquire
JACOBS LAW OFFICE
7020 MacCorkle Avenue, SE
Charleston, WV 25304

/s/ A. L. Emch                                                December 17, 2013
      (signature)                                                    (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____    Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    YES    NO

2.    Does party/amicus have any parent corporations?    YES    NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    YES    NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                            YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____          _____
          (signature)                                  (date)

- 2 -

# **TABLE OF CONTENTS**

Corporate Disclosure Statements

Table of Authorities ..................................................................... iii

Statement of the Issues.................................................................. 1

Statement of the Case ................................................................... 2

    I.     Introduction ....................................................... 2

    II.    Background ....................................................... 3

    III.   Appellants entered into confidential settlement agreements and releases with Massey ......................................... 3

    IV.   The Government and Alpha enter into a Non-Prosecution Agreement ("NPA") .................................................. 5

Summary of the Argument............................................................. 6

Standard of Review ...................................................................... 7

Argument...................................................................................... 8

    I.     The District Court's ruling that the CVRA has no application here is correct ......................................... 8

    II.    The District Court's ruling that the NPA does not require a payment in addition to what Appellants already received is correct ........................................................ 13

         A.    The NPA is clear, unambiguous, and directly contrary to Appellants' arguments................................. 13

         B.    The civil Settlement Agreements and Releases clearly and unambiguously extinguish all Appellants' claims .......................................................... 19

i

Conclusion ................................................................................. 22

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**Cases:**

*Ashcroft v. Iqbal*,
    556 U.S. 663 (2009).............................................................................. 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................. 7

*DeVane v. Kennedy*,
    205 W. Va. 519, 519 S.E.2d 622 (1999) ............................................ 21

*E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*,
    213 F.3d 175 (4th Cir. 2000) ............................................................. 8

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ............................................................. 7

*Hensley v. Alcon Labs., Inc.*,
    277 F.3d 535 (4th Cir. 2002) ........................................................... 21

*In re McNulty*,
    597 F.3d 344 (6th Cir. 2010) ........................................................... 11

*In re Petersen*,
    No. 2:10-CV-298 RM,
    2010 WL 5108692 (N.D. Ind. Dec. 8, 2010)..................................... 11

*In re Rendon Galvis*,
    564 F.3d 170 (2d Cir. 2009) ............................................................. 11

*McCauley v. Home Loan Inv. Bank, F.S.B.*,
    710 F.3d 551 (4th Cir. 2013) ............................................................. 7

*Riner v. Newbraugh*,
    211 W. Va. 137, 563 S.E.2d 802 (2002) ........................................... 20

*Sanders v. Roselawn Mem'l Gardens*,
    152 W. Va. 91, 159 S.E.2d 784 (1968) ............................................. 20

*Searcy v. Paletz*,
 No. 6:07-1389-GRA-WMC,
 2007 WL 1875802 (D.S.C. June 27, 2007) ...................................... 10

*Searcy v. Skinner*,
 No. 6:06-1418-GRA-WMC,
 2006 WL 1677177 (D.S.C. June 16, 2006) ...................................... 10

*U.S. v. Turner*,
 367 F. Supp. 2d 319 (E.D.N.Y. 2005) ................................................ 10

*United States ex rel. McDermitt, Inc. v. Centex-Simpson Const. Co.*,
 34 F. Supp. 2d 397 (4th Cir. 1999) ..................................................... 21

*United States v. Daly*,
 No. 3:11-cr-121 (AWT),
 2012 WL 315409 (D. Conn. Feb. 1, 2012) ........................................ 11

## Rules and Statutes:

18 U.S.C. § 3771 ................................................................................... *passim*

18 U.S.C. § 3771(a) ................................................................................. 8

18 U.S.C. § 3771(a) (5) ........................................................................... 9

18 U.S.C. § 3771(a) (6) ........................................................................... 9

18 U.S.C. § 3771(a) (8) ........................................................................... 9

18 U.S.C. § 3771(e) ............................................................... 10, 11, 12, 16

Fed. R. Civ. Proc. 12(b)(6) ...................................................................... 1

W. Va. Code § 42-1-2, *et seq* ................................................................ 18

W. Va. Code § 55-7-6(b) ......................................................................... 18

**Other Authorities:**

Availability of Crime Victims' Rights under the Crime Victims' Rights
Act of 2004, 35 Op. O.L.C. 1, 5 (17 Dec. 2010) .......................................... 10
http://www.justice.gov/olc/opiniondocs/availability-crime-victims-rights.pdf

*Black's Law Dictionary* 509 (Abridged 8th ed. 2005) ................................. 17

U.S. Dep't of Justice, Office of Justice Programs, Office for
Victims of Crime, *Attorney General Guidelines for Victim and
Witness Assistance* 8 (2011 ed. Rev. May 2012) ......................................... 11
http://www.justice.gov/olp/pdf/ag_guidelines2012.pdf

## <u>STATEMENT OF THE ISSUES</u>

Appellants' Statement of the Issues is both inaccurate and overbroad.

First, Appellants inaccurately characterize a jurisdictional ruling by the United States District Court for the Southern District of West Virginia ("District Court") as the dismissal of Appellants' causes of action filed pursuant to 18 U.S.C. § 3771, the Crime Victims' Rights Act ("CVRA"). The District Court did not rule on the merits of that claim, but concluded that the CVRA did not give rise to federal question jurisdiction under the circumstances.[1]

Second, Appellants characterize the issues related to the dismissal of their latest Complaint too broadly. The District Court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) gives rise to only one issue on this appeal: Did the District Court err in dismissing Appellants' Complaint based upon the clear and unambiguous language of the Non-Prosecution Agreement?

---

[1]    This issue was raised in the Appellants' prior appeal to this Court. *See Skeens, et al. v. Alpha Natural Resources, Inc., et al.*, No. 13-1727. That case arose after Appellants appealed the District Court's dismissal of their Amended Complaint without prejudice, finding that Appellants had not properly pled diversity jurisdiction and that federal question jurisdiction was not present because the CVRA did not apply. *See* JA 47-48. This Court dismissed that appeal on the ground that it was an improper interlocutory appeal. JA 174-75.

## STATEMENT OF THE CASE

**I.     Introduction.**

In this instance, the only issue posed is whether the allegations in the Complaint established a claim upon which relief could be granted.  The District Court correctly held that they did not.

Appellants filed a Complaint, amended it, then filed a new Complaint in the District Court, each time alleging in slightly different ways that they are entitled to additional "restitution" payments pursuant to a Non-Prosecution Agreement ("NPA") entered into between the United States Attorney's Office for the Southern District of West Virginia ("USAO"), the United States Department of Justice (together, the "Government"), Alpha Natural Resources, Inc., and Alpha Appalachia Holdings, Inc. (formerly known as Massey Energy Company ("Massey")) (together, "Alpha").   *See* JA 20-38, 51A-51T; *see also* JA 75-138.  In response, Alpha filed a Motion to Dismiss and Memorandum in Support. *See* JA 183–260, 361–451. Appellants filed a Response. *See* JA 261–346. Alpha filed a Reply. *See* JA 347–60, 452–62.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████████

Appellants promptly filed the instant appeal.

## II.    Background.

On 5 April 2010, an explosion occurred at the Upper Big Branch Mine ("UBB") near Montcoal, West Virginia.  Twenty-nine miners died and two suffered serious personal injuries.  Within days of the explosion, Massey made identical offers to families of the deceased miners ████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████

## III.    Appellants entered into confidential settlement agreements and releases with Massey.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████    As the duly qualified representatives of deceased miners' estates, Appellants possessed the sole and exclusive right to assert a claim or cause

3

of action against Massey and/or any other party arising out of the explosion and

their decedents' deaths. ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████







In approving Appellants' settlements, Judge Thompson specifically found:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

4



## IV.    The Government and Alpha enter into a Non-Prosecution Agreement ("NPA").

On 1 June 2011, Alpha Natural Resources, Inc. acquired Massey and its affiliate, Performance Coal Company ("Performance"), which operated UBB. On 6 December 2011, after the Appellants' settlements had been approved and following extensive cooperation by Alpha in the Government's investigation into the facts and circumstances surrounding the explosion, the Government and Alpha entered into the NPA. Under the terms of the NPA, the Government agreed not to prosecute Alpha or its affiliates, including the former Massey and Performance, regarding the UBB explosion.[2] *See* JA 75–138, 283–346. In return, Alpha agreed to continue its cooperation, implement a number of remedial measures, expend

---

[2]

$48,000,000 to establish a trust to fund projects designed to improve mine health and safety, and make certain payments. *See* JA 78, ¶ 6; 286, ¶ 6.

The Government and Alpha also agreed that if during the two-year period commencing on the date of execution of the NPA the Government determined that Alpha had "given false or misleading testimony or information in connection with this Agreement, the disclosures that led to this Agreement, or the performance of this Agreement," the Government had the ultimate authority to decide whether Alpha had complied with the NPA. JA 81, ¶ 13; 289, ¶ 13.  Further, the parties agreed "that the Government's final determination will not be subject to review in any judicial proceeding." *Id.*[3] The required two-year period expired as of 6 December 2013 without any question from the Government challenging Alpha's full and complete compliance with the NPA, including its provisions relating to Appellants.

## SUMMARY OF THE ARGUMENT

Appellants contend that they are entitled to additional money in excess of what they have already been paid by Alpha, and they assert that the CVRA and

---

[3]      While the NPA precluded any charge against or prosecution of Alpha, Massey, and their affiliates, the criminal investigation of individuals and other entities continued, with the USAO obtaining stays of various civil actions to allow it to finish the investigation unimpeded.  The last of these stays expired on 15 January 2014, and the investigation produced no charge, information, or indictment of any person or entity alleging criminal conduct that contributed to cause the UBB explosion.

NPA provide the basis for their claims. However, Appellants are not "crime victims" under the CVRA, so it has no applicability to them in any circumstance.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████ Accordingly, the District Court's dismissal of the Complaint should be affirmed.

## STANDARD OF REVIEW

The Fourth Circuit reviews a district court's grant of a motion to dismiss *de novo*, "focusing only on the legal sufficiency of the complaint." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 554 (4th Cir. 2013) (citing *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). "[T]he pleading . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). Statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Id.* at 679. The Court shall "'take the facts in the light most favorable to the plaintiff,' but 'we need not accept the legal conclusions drawn from the facts.'" *McCauley*, 710 F.3d at 554

7

(quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

## ARGUMENT

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████

**I.    The District Court's ruling that the CVRA has no application here is correct.**

The CVRA provides "crime victims" with eight enumerated rights.[4]

Appellants allege that they are "crime victims" under the statute and that they were

---

[4]    The eight rights set out in 18 U.S.C. § 3771(a) are:

(1)    The right to be reasonably protected from the accused.

(2)    The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.

(3)    The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim

8

specifically denied the three rights described in 18 U.S.C. § 3771(a) (5), (6), and (8): the "reasonable right to confer" with the Government attorney, the "right to full and timely restitution as provided in law," and the "right to be treated with fairness[.]" *See* Appellants' Br. at 15. Appellants are wrong for two reasons. First, Appellants are not "crime victims" under the CVRA. JA 47. ████████

████████████████████████████████

████████████████████████████████

████████████████████████████

A "crime victim" as defined by the CVRA is "a person directly and proximately harmed as a result of the commission of a Federal offense or an

---

would be materially altered if the victim heard other testimony at that proceeding.

(4)     The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

(5)     The reasonable right to confer with the attorney for the Government in the case.

(6)     The right to full and timely restitution as provided in law.

(7)     The right to proceedings free from unreasonable delay.

(8)     The right to be treated with fairness and with respect for the victim's dignity and privacy.

offense in the District of Columbia." 18 U.S.C. § 3771(e). As the United States Department of Justice has observed, "it is not clear how one ascertains whether a particular harm is the result of a 'Federal offense' or some other sort of conduct that does not constitute a Federal offense." Availability of Crime Victims' Rights under the Crime Victims' Rights Act of 2004, 35 Op. O.L.C. 1, 5 (17 Dec. 2010), available at http://www.justice.gov/olc/opiniondocs/availability-crime-victims-rights.pdf. As such, "most courts to consider who qualifies as a 'crime victim' under the Act have declined to extend enforceable rights under the CVRA to alleged victims of conduct that did not lead to criminal proceedings." *Id.* at 5–6 (citing *U.S. v. Turner*, 367 F. Supp. 2d 319, 326 (E.D.N.Y. 2005) (excluding victims of uncharged conduct from the class of those entitled to participatory rights under the Act because only "the offense charged against a defendant can serve as a basis for identifying a 'crime victim' as defined in the CVRA")); *see also Searcy v. Paletz*, No. 6:07-1389-GRA-WMC, 2007 WL 1875802, at *6 (D.S.C. June 27, 2007) (inmate does not qualify as "crime victim" under CVRA where there has been prosecutorial decision not to charge another inmate accused of attacking him); *Searcy v. Skinner*, No. 6:06-1418-GRA-WMC, 2006 WL 1677177, at *2 (D.S.C. June 16, 2006) (where government declined to prosecute inmate accused

10

of attacking plaintiff, plaintiff could not use CVRA as basis to bring his own action against inmate).[5]

This is consistent with the Department of Justice's position.  The *Attorney General Guidelines for Victim and Witness Assistance* explains that "a victim is 'a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia' (18 U.S.C. § 3771(e)) **if the offense is charged in federal district court** or the Superior Court of the District of Columbia."  U.S. Dep't of Justice, Office of Justice Programs, Office for Victims of Crime, *Attorney General Guidelines for Victim and Witness Assistance* 8 (2011 ed. Rev. May 2012), available at http://www.justice.gov/olp/pdf/ag_guidelines2012.pdf (emphasis added).

---

[5]    *See also In re McNulty*, 597 F.3d 344, 352 n.9 (6th Cir. 2010) ("[F]or purposes of the CVRA definition of 'crime victim,' the only material federal offenses are those for which there is a conviction or plea."); *In re Rendon Galvis*, 564 F.3d 170, 175 (2d Cir. 2009) ("[D]istrict court correctly found that, even considering Rendon's factual allegations, there was insufficient evidence of a nexus between Vargas's death and Murillo-Bejarano's participation in the charged conspiracy to import cocaine" to name Rendon a "victim" and apply the CVRA.); *United States v. Daly*, No. 3:11-cr-121 (AWT), 2012 WL 315409, at *4 (D. Conn. Feb. 1, 2012) ("[A] more logical interpretation of the statute is that a person has the rights of a 'crime victim' for purposes of the CVRA no sooner than the point in time when an offense has been charged."); *In re Petersen*, No. 2:10-CV-298 RM, 2010 WL 5108692, at *2 (N.D. Ind. Dec. 8, 2010) ("The statute and legislative history of the CVRA indicate that the right . . . 'to confer with the attorney for the Government in the case,' . . . 18 U.S.C. § 3771(a)(4)-(7), arise only after charges have been brought against a defendant and a case has been opened.").

As the CVRA explicitly requires, there must have been a "Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e).  Although Appellants consistently refer to the tragic explosion at the UBB mine on 5 April 2010 as a "crime," that does not make it so.  While no one, least of all Alpha, would ever attempt to diminish or minimize the horrific nature of the explosion, and while adjectives like "tragic, terrible, horrible, awful, unacceptable," among others, may properly be used to describe it, the explosion does not by its occurrence alone establish itself as a "crime" as might the planting of a bomb, forced entry of a house and robbery at gunpoint, or a myriad of other events that, on their face, arguably self-identify as "crimes."

The United States Attorney for the Southern District of West Virginia began an investigation into the UBB explosion immediately after its occurrence; by all appearances, that investigation is now over, and has not resulted in any indictment, charge, or information alleging criminal conduct that caused the UBB explosion against any person or entity.  Thus, while Appellants may rightly claim the status of "victims injured in the UBB explosion," as they are described in the NPA, it is absolutely incorrect and without basis for them to assert that they are "victims of federal crimes committed by agents of Massey" or that "[i]t is not disputed that all of the families of the decedents suffered similar injuries and or death as a result of the criminal acts at Upper Big Branch."  Appellants' Br. at 9, 16 (emphasis added).

12

The District Court devoted very little space to Appellants' CVRA "argument" because it is so obviously, simplistically deficient. Whatever may be hypothetically asserted, the NPA irrefutably **establishes** as to Appellees that there is no crime charged and that there never will be any crime charged, so there are and can be no rights existing or created under the CVRA. Appellants' constant reiteration of the word "crime" cannot conjure one.

The District Court correctly ruled that the CVRA did not apply. That ruling should be affirmed.

## II. The District Court's ruling that the NPA does not require a payment in addition to what Appellants already received is correct.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ The answer is easy.

### A. The NPA is clear, unambiguous, and directly contrary to Appellants' arguments.

The contract that is the centerpiece of Appellants' claims is the NPA entered into between the Government, Massey (renamed Alpha Appalachia Holdings, Inc. after the merger), and its then-new owner, Alpha Natural Resources, Inc. No matter how it is approached, Appellants' claims are entirely based upon the language of paragraph 8 of the NPA, ████████████████████████

████████████████████████

13

The portion of the NPA that is specifically applicable to and defeats the claims of Appellants is:

> 8.  As restitution for the victims injured in the UBB explosion,  Alpha agrees to pay, or to cause Massey or its affiliates to pay,  at        least $1,500,000 to each of the families of the fallen miners     and  to  two individuals affected by the UBB explosion.   The total restitution payment shall be $46,500,000, of which (a) $16,500,000 was previously or anticipated to be paid as part of settlements with the families of eleven of the fallen miners in the actions in Appendix C[.] . . . .

JA 79, ¶8; 287, ¶ 8.[6]

---

[6]      Paragraph 8 of the NPA provides, in its entirety, as follows:

> As restitution for the victims injured in the UBB explosion, Alpha agrees to pay, or to cause Massey or its affiliates to pay, at least $1,500,000 to each of the families of the fallen miners and to two individuals affected by the UBB explosion.   The total restitution payment shall be $46,500,000, of which (a) $16,500,000 was previously or anticipated to be paid as part of settlements with the families of eleven of the fallen miners in the actions in Appendix C; and (b) $30,000,000 will be paid to the families of the fallen miners and two individuals affected by the UBB explosion in the actions in Appendix D who have not resolved their claims, consisting of payments to each of (i) $500,000 to be paid within 15 days of the execution of this Agreement, and (ii) $1,000,000 which will be payable at the time of the resolution of pending civil claims through settlement, judgment, or otherwise, and as part of such civil resolution to the extent the civil resolution results in a monetary recovery.   Alpha will make the payment described in subparagraph (b) above into a fund established to pay those families of the fallen miners and the individuals.

14

This language is straightforward. It acknowledges that at least $1,500,000 each, a total of $16,500,000, had already been paid or was scheduled to be paid "as part of settlements with the families of eleven of the fallen miners in the actions in Appendix C." *Id.* Appendix C includes the actions of the three Appellants, all of whom were among those who had "previously" been paid. JA 137, 345. The "actions" listed in Appendix C are summary proceedings whose purpose is to petition for and obtain court approval of wrongful death settlements. As of the date of the NPA, ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████

The NPA included two separate appendices to distinguish between those who would receive payment when and if they resolved their civil claims in the future (those listed in Appendix D, JA 138, 346) and those who had already received payment or who had agreed to receive payment because they had already settled all of their claims (those listed in Appendix C, JA 137, 345). Eleven actions are listed in Appendix C; eleven times $1,500,000 equals $16,500,000. Appellants' decedents are specifically named in Appendix C because the Appellants had "previously" entered into Settlement Agreements and been paid "at

JA 79, ¶8; 287, ¶ 8.

15

least" $1,500,000. The NPA does not provide for any further compensation to those listed in Appendix C; it simply acknowledges that they have already received their money. The NPA language could hardly have more clarity or be more succinct. It quite plainly states that the $1,500,000 payment is "part of the settlements" with those families—not something different from or in addition to them. JA 79, ¶8; 287, ¶ 8. ██████████████████████

███████████████████████████████████████████

████████████████████████████████████

Conveniently, Appellants fail to discuss paragraph 8(a), much less acknowledge that it controls the outcome of their case. Instead, Appellants urge that the key to determining whether Alpha fulfilled its obligations under the NPA is to define the word "families." Appellants illogically argue throughout their brief without any basis whatsoever that the word "families" as used in the NPA means "estate beneficiaries" rather than "wrongful death beneficiaries."[7] Appellants spend page after page of their brief torturing the word "families," which is not defined in the NPA for one very simple reason: it does not need to be defined

---

[7] Appellants cite the CVRA in an attempt to support their expulsion of the word "families," but the CVRA actually recognizes its separate validity. *See* 18 U.S.C. § 3771(e) (stating, in pertinent part, "[i]n the case of a crime victim who is . . . deceased, the legal guardians of the crime victim or the representatives of the crime victim's estate, **family members**, or any other persons appointed as suitable by the court, may assume the crime victim's rights under this chapter"). Nevertheless, as discussed above, the CVRA is inapplicable here.

because it is not intended to have any particular, limited meaning.  Appellants misconstrue the issue.  The issue is not whether "families" means "estate beneficiaries," "wrongful death beneficiaries," or something else.  The issue is whether Alpha fulfilled its obligations to Appellants as expressed so clearly in paragraph 8(a) and Appendix C of the NPA.  ████████████████████████ ████████████████████████████████████████

"Families" is a generic, not a specific or limiting, term.[8]  "Estate beneficiaries" may not include all members of a modern family.  Whether an individual is classified as an estate beneficiary depends on numerous factors, including whether there is a will and, if not, which of them survive the deceased. Indeed, an "estate beneficiary" need not even be a family member.  Assume the case where a decedent leaves her entire estate to her alma mater – and nothing to any member of her "family."  Appellants certainly would not argue that "families" means "estate beneficiaries" if their decedents had wills that left their entire estates to non-family members.  Regardless, such distinctions are irrelevant for this case. The point is not to re-define the word "families" but rather to read it in context as used in the NPA.

---

[8]    Black's Law Dictionary defines family as "1. A group of persons connected by blood, by affinity, or by law, esp. within two or three generations.  2. A group consisting of parents and their children.  3. A group of persons who live together and have a shared commitment to a domestic relationship."  *Black's Law Dictionary* 509 (Abridged 8th ed. 2005).

The NPA uses the term "families" generically and, viewed under the facts of the situation presented here, in its traditional sense. *See* JA 79, ¶8; 287, ¶8. The West Virginia Wrongful Death Statute covers spouses, children, and parents, as well as others. *See* W. Va. Code § 55-7-6(b). The laws of West Virginia intestate succession also cover spouses, children, and parents, among others. *See* W. Va. Code § 42-1-2, *et seq*. Here, the "families" involved are the spouses, children, and parents of the deceased. Appellants' Br. at 6. Thus, far from creating distinct groups, in this instance "families," "estate beneficiaries," and "wrongful death beneficiaries" all include the Appellants.

The fight that Appellants try to pick about what "families" means is, in reality, meaningless insofar as understanding the clear intent of the NPA is concerned. As to Appellants, the NPA does not depend upon a particular quoted or implied definition of "families" because it draws the necessary parallel itself and states a fact: that "(a) $16,500,000 was previously or anticipated to be paid as part of settlements with the families of eleven of the fallen miners in the actions in Appendix C." Thus, within that construct, the word "families" ties directly to the settlements reached in the actions listed in Appendix C, and these three Appellants' actions are listed there. "Families" equals "actions in Appendix C" equals "previously . . . paid" "at least $1,500,000" as required by the NPA.

18

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████

**B.      The civil Settlement Agreements and Releases clearly and unambiguously extinguish all Appellants' claims.**

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████    That is what wrongful death

settlements – requiring court approval after thorough review and the taking of

evidence – do: settle <u>all</u> claims for everyone always.

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

19

 Unambiguously,

comprehensively broad.

Consistent with well-settled law, now that Appellants have gotten the benefits of their settlement agreements with Alpha, the terms of those agreements must be scrupulously enforced. The "law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts." Syl. pt. 5, *Riner v. Newbraugh*, 211 W. Va. 137, 144, 563 S.E.2d 802, 809 (2002); *see also* Syl. pt. 1, *Sanders v. Roselawn Mem'l Gardens*, 152 W. Va. 91, 104, 159 S.E.2d 784, 792 (1968) ("Both law and equity favor repose of litigious matters.

Compromise by parties of their differences is favored by all courts. When a matter has thus been put at rest, it should not be disturbed except for grave cause."). "The general principle is that a settlement agreement, voluntarily entered into, cannot be repudiated by either party and will be summarily enforced by the court." *United States ex rel. McDermitt, Inc. v. Centex-Simpson Const. Co.*, 34 F.Supp.2d 397, 399 (4th Cir. 1999); *see also DeVane v. Kennedy*, 205 W. Va. 519, 534, 519 S.E.2d 622, 637 (1999) (settlement agreements are "highly regarded and scrupulously enforced" by courts in West Virginia). Consequently, "[w]here parties have made a settlement . . . such settlement is conclusive upon the parties thereto as to the correctness thereof in the absence of accident, mistake, or fraud in making the same." Syl. pt. 7, *DeVane*, 205 W. Va. at 535, 519 S.E.2d at 638. Notably, "[h]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002).

This deeply embedded legal principle that settlements are sacrosanct, respected and enforced through West Virginia's wrongful death settlement law and procedures, was specifically acknowledged by the parties in the NPA through its recognition that the settlements of Appellants and others listed in Appendix C satisfied its minimum requirements.

███████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████

## <u>CONCLUSION</u>

Appellants' motivations are obvious, and the District Court's rejection of them should be affirmed. ████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

Accordingly, Alpha respectfully requests that this Court affirm the District Court's dismissal of Appellants' Complaint with prejudice.

22

Respectfully submitted,

**ALPHA NATURAL RESOURCES, INC.
and ALPHA APPALACHIA
HOLDINGS, INC.,**

BY COUNSEL

/s/ A.L. Emch, Esq.
A. L. Emch (WVSB: 1125)
Gretchen M. Callas (WVSB: 7136)
JACKSON KELLY PLLC
Post Office Box 553
500 Lee Street, East, Suite 1600
Charleston, WV  25301-3202
(304) 340-1000

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 13-2444         **Caption:** Jeffrey Skeens, et al. v. Alpha Natural Resources, et al.

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓] this brief contains _____5,437_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ ] this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

   [ ] this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) A.L. Emch

Attorney for Alpha Natural Resources, Inc. et al

Dated: 3/12/2014

# CERTIFICATE OF SERVICE

I certify that on <u>March 12, 2014</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

George Patrick Jacob
Law Office of G. Patrick Jacobs, LC
7020 MacCorkle Avenue, SE
Suite 823
Charleston, WV 25304-0000
304-926-6676
pjacobs@bjblaw.com

J. Michael Ranson
Ranson Law Offices
P. O. Box 3589
1562 Kanawha Boulevard East
Suite 1711
Charleston, WV 25336-3589
304-345-1990
jmr@ransonlaw.com

/s/ A.L. Emch
_____
Signature

3/12/2014
_____
Date